UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**FILED**

April 13, 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____NM_____
DEPUTY

| | |
|---|---|
| PABLO DANIEL HERNANDEZ BARRERA,<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security, *et al.*,[1]<br><br>Respondents. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br><br>NO. SA-26-CV-00976-OLG |

**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**

Before the Court is Petitioner Pablo Daniel Hernandez Barrera's Verified Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Dkt. No. 1). Respondents have responded (Dkt. No. 9), and Petitioner has filed a Motion for Temporary Restraining Order (Dkt. No. 10). For the reasons below, Petitioner's request for habeas relief will be granted and his request for a TRO will be dismissed as moot.

## I.    BACKGROUND

Petitioner is a citizen of El Salvador who entered the United States without inspection on August 1, 2011. (Dkt. No. 1 at 4; Dkt. No. 9-2 ¶ 4.) Almost six years later, Petitioner was detained by law enforcement for reckless driving, was found to be subject to removal, and was issued a Notice to Appear on July 27, 2017 (Dkt. No. 9-2 ¶¶ 5–6.) On April 19, 2019, an immigration judge ordered Petitioner removed but granted him protection from removal under the Convention Against Torture (CAT); because no appeal was filed, the order became administratively final. (*Id.*

---

[1]Markwayne Mullin became the Secretary of the Department of Homeland Security on March 24, 2026. As a result, he is automatically substituted as a Respondent in this action. *See* FED. R. CIV. P. 25(d).

¶ 7; Dkt. No. 1 at 5.) Two months later, on June 20, 2019, Petitioner was released from custody under an Order of Supervision (OSUP). (Dkt. No. 1-3 at 2, 4; Dkt. No. 9-2 ¶ 8.)

On January 22, 2026, Petitioner "was [re-]detained when he reported to ICE as ordered on his OSUP." (Dkt. No. 9-2 ¶ 9; *see* Dkt. No. 1 at 5.) At that time, his OSUP was revoked and he was taken back into custody for no apparent reason. (Dkt. No. 9-2 ¶ 10.) Petitioner initiated this case on March 10, 2026, seeking a writ of habeas corpus compelling his release under *Zadvydas v. Davis*, 533 U.S. 678 (2001) and asserting that his detention is unlawful because there is no significant likelihood of removal in the reasonably foreseeable future. (Dkt. No. 1 at 9.)[2]

## II.    DISCUSSION

"Once an alien is ordered removed, DHS must physically remove him from the United States within a 90-day 'removal period.'" *Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. § 1231(a)(1)(A)). During the 90-day removal period, detention is mandatory, *see id.* (citing 8 U.S.C. § 1231(a)(2)); however, "[u]pon expiration of the removal period, the Government may continue to detain certain aliens or release them under conditions of supervision," *Abuelhawa v. Noem*, 811 F. Supp. 3d 847, 855 (S.D. Tex. 2025) (citing 8 U.S.C. § 1231). "Although the statute does not specify a time limit on how long DHS may detain an alien in the post-removal period," post-removal detention may last no longer than what is "reasonably necessary to bring about the alien's removal." *Guzman Chavez*, 594 U.S. at 529 (quoting *Zadvydas*, 533 U.S. at 689). Recognizing that not all reasonably foreseeable removals can be accomplished within the three-month removal period, the Supreme Court has generally held that such detentions are "presumptively reasonable" for up to "six months." *Zadvydas*, 533 U.S. at 701. After that point,

---

[2]As an alternative basis for his release, Petitioner argues that Respondents violated their own regulations when they revoked his OSUP. (Dkt. No. 1 at 8–9.) As Petitioner is entitled to release under 8 U.S.C. § 1231 and *Zadvydas*, the Court will not consider his regulations-based argument.

release is required if "there is no significant likelihood of removal in the reasonably foreseeable future." *Guzman Chavez*, 594 U.S. at 529 (citation omitted).

Respondents first mistakenly argue that Petitioner has not yet been detained for 90 days. (Dkt. No. 9 at 3.) Although Petitioner was re-detained on January 22, 2026, "the *Zadvydas* period is cumulative," meaning that the duration of his pre-OSUP detention and recent re-detention must be aggregated in calculating whether the presumptive period has expired. *Abuelhawa*, 811 F. Supp. at 855–56. Following his final order of removal, Petitioner was detained for approximately two months in 2019 prior to his release under an OSUP, and he has been detained for almost three months so far this year. (Dkt. No. 9-2 ¶¶ 7–10.) The six-month-presumptively-reasonable period has therefore not expired; however, "nothing in *Zadvydas* precludes a challenge to detention before [that] period has elapsed." *Villanueva v. Tate*, 801 F. Supp. 3d 689, 702 (S.D. Tex. 2025).

Next, Respondents argue that Petitioner "has failed to show 'good reason' to believe that removal to a third-party country is unlikely." (Dkt. No. 9 at 3.) Because this case involves a re-detention and OSUP revocation, however, "it is [Respondents'] burden to show a significant likelihood that [Petitioner] may be removed." *Garcia-Aleman v. Thompson*, No. SA-25-CV-886-OLG-HJB, 2025 WL 3534806, at *4 (W.D. Tex. Nov. 24, 2025) (quoting *Escalante v. Noem*, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025)), *report and recommendation adopted*, No. SA-25-CV-886-OLG, 2025 WL 3532179 (W.D. Tex. Dec. 9, 2025); *see* 8 C.F.R. § 241.13(i).

Petitioner has been subject to a final order of removal for almost seven years. Because his removal to El Salvador is subject to CAT withholding, he may not be removed to his country of origin. (*See* Dkt. No. 9-2 ¶¶ 7, 11.) "As a general matter, very few people subject to withholding of removal or CAT relief are removed from the United States." *Garcia-Aleman*, 2025 WL 3534806,

at *5 (quoting *Puertas-Mendoza v. Bondi*, No. 25-CA-00890-XR, 2025 WL 3142089, at *2 (W.D. Tex. Oct. 22, 2025) (alterations omitted)). Since 2019, Respondents either did not attempt to or were unable to locate a third country to which Petitioner could be removed, and they still have not identified any country to which they have even sent a request for acceptance of Petitioner. (*See* Dkt. No. 9 at 3–6; Dkt. No. 9-2 ¶¶ 13–14.) Nor have they provided any justification for the revocation of Petitioner's OSUP or his arrest. (*See* Dkt. No. 9-2 ¶¶ 9–10.)

Yet, Respondents conclude in their response that "there is no good reason to believe that removal to a third-party country in the reasonably foreseeable future is unlikely." (Dkt. No. 9 at 6.) This, coupled with the ICE officer's similarly cursory statement that "there are no known impediments to his removal" (Dkt. No. 9-2 ¶ 14), is insufficient to carry Respondents' burden. *See Puertas-Mendoza*, 2025 WL 3142089, at *2 (noting that "foreign governments 'routinely deny' requests to receive people who lack a connection to the would-be receiving country" and granting habeas petition). Indeed, any likelihood of removal is belied by Respondents' own evidence—that ICE has "halted" all third-country removal efforts "pending the outcome" of this proceeding (Dkt. No. 9-2 ¶¶ 13–14)—which affirmatively establishes no likelihood of Petitioner's removal to a third country in the reasonably foreseeable future.

### III.    CONCLUSION

Based on the rareness of third-country removals, the period of over six years between Petitioner's final removal order and his current detention, the absence of any reason in the record for the revocation of his OSUP, and Respondents' concession that no removal efforts are ongoing, the Court finds that there is no significant likelihood of Petitioner's removal in the reasonably foreseeable future.

Accordingly, Petitioner Pablo Daniel Hernandez Barrera's Petition for Writ of Habeas Corpus (Dkt. No. 1) is **GRANTED IN PART** as follows:

1.    Respondents must release Petitioner Pablo Daniel Hernandez Barrera (A-216-109-759) from custody, under conditions substantially similar to those contained in his prior OSUP, to a public place on or before **Thursday, April 16, 2026**;

2.    Respondents must notify Petitioner's counsel of the exact location and time of Petitioner's release as soon as practicable and **at least two hours before release**; and

3.    Respondents must file a status report no later than **Monday, April 20, 2026**, confirming that Petitioner has been released under conditions of release no more restrictive than those in place before the detention at issue in this case.

The Petition is **DENIED IN PART** to the extent Petitioner seeks attorney's fees under the Equal Access to Justice Act. *Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023) ("[T]he EAJA does not authorize attorney's fees for successful 28 U.S.C. § 2241 motions."), *cert. denied*, 144 S. Ct. 553 (2024).

Petitioner's Motion for Temporary Restraining Order (Dkt. No. 10) is **DISMISSED AS MOOT**.

This Order is a **FINAL JUDGMENT**, and the Clerk is directed to **CLOSE** this case upon its entry.

It is so **ORDERED**.

**SIGNED** on April _____13_____, 2026.

_____
ORLANDO L. GARCIA
United States District Judge

5